OPINION
In this accelerated calendar case submitted on the briefs of the parties, appellant, Victor Kruppa, appeals from the decision of the Trumbull County Court of Common Pleas, Central Division, granting appellee, All Souls Cemetery of the Diocese of Youngstown, summary judgment on appellant's claim for breach of contract.[1]
The following facts gave rise to this present matter. On November 22, 1999, the parties entered into an agreement wherein appellant would purchase from appellee a burial marker for his deceased wife's burial plot. Appellant paid $543.33 for the burial marker, which was the amount quoted to him in writing by appellee. However, a mistake was made in the pricing of this marker. Upon discovery thereof, appellee informed appellant later that same day that an additional sum of $1,360.95 was needed for the cost of the burial marker. Appellant gave appellee a check in the amount of $1,360.95, dated November 22, 1999. On the face of the check was the following notation: "PAYMENT UNDER PROTEST."
As a result of these events, on August 21, 2000, appellant filed a complaint in the Trumbull County Court of Common Pleas, Central Division, claiming, inter alia, that appellee breached the original $543.33 agreement causing damage to him in the amount of $1,360.95.
In response, appellee filed an answer admitting that the parties entered into an agreement wherein the corporation "agreed to erect a memorial upon the grave purchased by [appellant], and * * * that said memorial was ultimately paid for in full." Further, appellee admitted that "a mistake was made in the pricing of [the] memorial and, upon discovery thereof, prior to delivery of the memorial, the mistake was communicated to [appellant] who agreed to and did pay the additional sum of $1,360.95 * * *."
Subsequently, appellant filed a motion for summary judgment arguing that appellee made a unilateral mistake of fact with respect to the price. From this, appellant concluded that he was entitled to enforce the terms of the $543.33 agreement and was entitled to a refund of $1,360.95.
In turn, appellee filed a response to appellant's motion for summary judgment, in conjunction with its own motion for summary judgment. Therein, appellee claimed that it was entitled to recission of the original contract on grounds of a unilateral mistake as appellant could have been restored to his original position if he had accepted a refund of the amount paid. To support its position, appellee attached the affidavit of Jack Hamilton ("Mr. Hamilton"), a salesman for the corporation, averring that he had offered a refund:
 "I immediately called Mr. Kruppa and spoke with a man. I advised him that an error had been made in the pricing of the memorial, and that we would be happy to refund the full amount that had been paid if they were not happy. I also advised him that he could check with other dealers, and it would be obvious that there had been an error in the pricing. I advised him that the cemetery would go along with whatever he was comfortable with."
Rather than accept the refund, appellee claims that appellant voluntarily paid the additional amount of $1,360.95, thereby entering into a new agreement.[2]
Upon consideration of these motions, the trial court issued a judgment entry on February 9, 2001, granting summary judgment in favor of appellee on the basis that appellant's act of paying appellee the additional costs novated and ratified the original contract.
Appellant attempted to appeal from the this judgment entry. However, because less than all of the claims had been resolved, and the trial court did not find that there was no just reason for delay, this court determined that the February 9, 2001 judgment entry was not a final appealable order.[3] As a result, we issued a judgment entry on November 20, 2001, remanding the matter to the trial court so that a nunc protunc judgment entry could be issued containing Civ.R. 54(B) language, if the court deemed appropriate.
Upon remand, the trial court issued a nunc pro tunc judgment entry on November 27, 2001, and added the requisite Civ.R. 54(B) language to make the judgment a final appealable order. As a result, appellant's March 12, 2001 notice of appeal was a premature appeal as of November 27, 2001, and we will fully consider the merits in the instant appeal. App.R. 4(C).
Returning to the merits of this appeal, appellant submits the following assignments of error for our consideration:
 "[1.] The trial court committed error when it granted summary judgment to appellee based on novation and ratification[.]
 "[2.] The trial court committed prejudicial error when it granted summary judgment in favor of appelle[e] when genuine issues of material fact remained to be litigated[.]"
Because the first and second assignments of error are interrelated in that they both challenge the granting of summary judgment in favor of appellee, we will consolidate these assignments of error for purposes of analysis and resolution.
An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Lennon v. Neil
(2000), 139 Ohio App.3d 437, 441-442.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993),67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
In the two assignments of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment on the basis of novation and ratification as there was no mutual assent and affirmation by both parties. In rebuttal, appellee maintains that the "payment under protest" notation on the check did not make the payment involuntary; rather, appellant consented to a new agreement by tendering the additional costs.
Appellant further claims that genuine issues of material fact exist on the issue of unilateral mistake; that is, whether appellant acted in good faith and changed his position in reliance of appellee's mistaken price of the burial marker. Appellee counters by suggesting that even if a unilateral mistake had occurred, it was entitled to a rescission of the $543.33 agreement because appellant could have been easily restored to his original position if he had accepted the refund offered by appellee.
In general, an enforceable contract exists when there is an offer by one side, acceptance by the other side, and a meeting of minds as to the offer and acceptance. Camastro v. Motel 6 Operating, L.P. (Apr. 27, 2001, Trumbull App. No. 2000-T-0053, unreported, 2001 WL 435361, at 2. In the instant matter, appellee admittedly quoted the price of $543.33 to appellant for a burial marker. Appellant tendered payment by way of check, which was accepted by appellee. At that point, a contract was entered into between the parties. See, e.g., Earhart Petroleum, Inc. v.Yowell Transp. (May 17, 1995), Montgomery App. No. 14665, unreported, 1995 WL 300728, at 5; Burlington N. Air Freight v. D.M. Waltz Drilling,Inc. (Aug. 11, 1982), Tuscarawas App. No. CA-1610, unreported, 1982 WL 5478, at 2.
However, after appellant had paid $543.33 for the burial marker andafter appellee had accepted this payment, appellee informed appellant that there had been a mistake in the pricing of such memorial. "A unilateral mistake occurs when one party recognizes the true effect of an agreement while the other does not." Gen. Tire, Inc. v. Mehlfeldt
(1997), 118 Ohio App.3d 109, 115. See, also, Marshall v. Beach (2001),143 Ohio App.3d 432, 437. There is no evidence in the record to indicate that appellant was similarly mistaken about the price of the burial marker. Therefore, any mistake was unilateral on the part of appellee. The $543.33 quote still remained valid and enforceable by the non-mistaken party. Earhart at 5; Burlington at 2. Our inquiry, however, does not end here.
"If the mistake was not mutual, but merely unilateral, the proper remedy is rescission, not reformation [of an otherwise valid contract]."Elmar Co. v. Bernacchia (Apr. 22, 1992), Lorain App. No. 91CA005153, unreported, 1992 WL 82656, at 3, citing Steward v. Gordon (1899),60 Ohio St. 170, 176. See, also, Gen. Tire at 115 (holding that "[r]escission is appropriate in the case of some unilateral mistakes");Marshall at 437.
In the instant matter, appellee claims that it is entitled to rescission of the $543.33 contract on grounds of unilateral mistake because appellant could have been restored to his original position if he had accepted a refund of the amount paid. As mentioned earlier, to support its position, appellee supplied the affidavit of Mr. Hamilton, wherein he averred that a refund was, indeed, offered.
We recognize that "[t]here may be rescission for unilateral mistake if the position of the parties has not changed in such a way that they cannot be restored to their original rights." Midwest Mut. Ins. Co. v.Lightning Rod Mut. Ins. Co. (Mar. 15, 1994), Belmont App. No. 92-B-53, unreported, 1994 WL 87188, at 2. However, "relief for a unilateralmistake of material fact will not be provided where such a mistake is theresult of the negligence of the party seeking relief." (Emphasis added.)Marshall at 437, citing Convenient Food Mart, Inc. v. Con. Inc., No. 3- 007 (Sept. 30, 1996), Lake App. 95-L-093, unreported, 1996 Ohio App. LEXIS 4338. See, also, Carucci v. John Hancock Mutl. Life Ins. Co. (1968), 15 Ohio App.2d 1, paragraph one of the syllabus; NationsbancMtge. Corp. v. Jones (Mar. 30, 2001), Mahoning App. No. 99-CA-236, unreported, 2001 WL 315312, at 4; Citizens Fed. Bank v. Moncarz (May 31, 1995), Hamilton App. Nos. C-940300 and C-940301, unreported, 1995 WL 324317 at 1; Midwest at 2.
In the instant matter, appellee admitted that it had made a mistake in the pricing of the burial marker through its secretary/bookkeeper, and that the mistake was discovered that same day.[4] Nevertheless, the negligent blunder of quoting the wrong price and then accepting appellant's money by appellee caused the unilateral mistake to occur. Under these particular circumstances, appellee is not entitled to rescind the $543.33 contract on the basis of a unilateral mistake when the mistake was the result of its own negligence.
Rather, "in order for a seller to avoid contractual liability due to his unilateral mistake in pricing his goods, one of the factors that must be shown is that the purchaser [knew or should have known] that the seller miscalculated the price written in the contract." Zimmerman v.U.S. Diamond Gold Jewelers, Inc. (Mar. 8, 1995), Montgomery App. No. 14680, unreported, 1995 WL 100820, at 5. See, also, Aviation Sales, Inc.v. Select Mobile Homes (1988), 48 Ohio App.3d 90, 94; Citizens Fed. at 2. In the case sub judice, appellee did not claim, nor does the evidence before this court suggest, that appellant knew or should have known of the mistake in price. Thus, to summarize briefly, appellee is not entitled to rescind the original $543.33 contract.
Next, we determine whether appellant's act of paying the additional cost of $1,360.95 constituted a novation and/or ratification of the original $543.33 agreement.
"Where a second contract replaces the first contract by establishing new rights and obligations, the result is a contract of novation which extinguishes liability under the first contract in favor of the second."Old Town Dev. Group v. St. Gregory Group, Inc. (Feb. 28, 1996), Hamilton App. No. C-950399, unreported, 1996 WL 82697, at 3, citing Levy v. Univ.of Cincinnati (1992), 84 Ohio App.3d 342. Thus, "the purpose of a novation is to replace an existing obligation with a new one * * *."Thompson v. Anderson (Jan. 20, 1994), Franklin App. No. 93APE08-1155, unreported, 1994 WL 14791, at 3. Similarly, ratification involves the "[c]onfirmation and acceptance of a previous act * * *." Black's Law Dictionary (2000) 1015.
"In order to effect a valid novation, all parties to the original contract must clearly and definitely intend the second agreement to be a novation and intend to completely disregard the original contract obligation." Moneywatch Cos. v. Wilbers (1995), 106 Ohio App.3d 122,125; Thompson at 2. Because a novation is never presumed "[i]ntent, knowledge and consent are the essential elements in determining whether a purported novation has been accepted." Bolling v. Clevepak Corp. (1984),20 Ohio App.3d 113, 125. Further, a novation must be based on valid consideration. Moneywatch at 125; McGlothin v. Huffman (1994),94 Ohio App.3d 240, 244. "The discharge of the existing obligation of a party to a contract is sufficient consideration for a contract of novation." McGlothin at 244.
Upon consideration, we determine that appellee failed to provide evidence to demonstrate that the elements for novation and ratification were present in this case. Appellee submitted the affidavit of Ms. Joseph to support the contention that appellant had voluntarily paid the additional sum of money:
 "11. When the check for $1,360.95 was presented to me, nothing was said to indicate that the payment was being made under any duress or under protest, and I did not see the words `payment under protest' on the check."
However, this allegation is contradicted by the protest written on the check and by Robert Kruppa's affidavit, appellant's son, which states that "[he] printed the words `payment under protest' [on the check] as we were not in agreement to these extra charges."[5] Accordingly, there exists issues of material fact as to whether appellant consented to a novation and/or ratification of the original $543.33 contract.
Further, contrary to appellee's assertion, R.C. 1301.13(A), which embodies the Uniform Commercial Code section 1-207, does, indeed, provide the phrase "payment under protest" with legal significance:
 "A party who, with explicit reservation of rights, performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as `without prejudice,' `under protest,' or the like are sufficient." (Emphasis added.)
Even if we were to accept appellee's claim that appellant "agreed" to pay the additional cost, as a matter of law, this has no legal effect due to the absence of consideration. As mentioned earlier in this opinion, "to be enforceable a novation requires consideration." (Emphasis added.)Moneywatch Co. at 125. Appellee failed to set forth facts or present evidentiary material to demonstrate the existence of consideration in exchange for the payment of the additional costs. In short, appellee failed to allege the necessary facts or present evidence sufficient to support the grant of summary judgment in its favor.
Based on the foregoing analysis, appellant's assignments of error are meritorious to the extent indicated. Accordingly, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
O'NEILL, P.J., GRENDELL, J., concur.
[1] In a judgment entry dated November 8, 2000, the trial court determined that the Catholic Cemeteries of the Diocese of Youngstown, Inc., should be substituted in place of All Souls Cemetery of the Diocese of Youngstown.
[2] Appellant filed a response to appellee's motion on February 8, 2001.
[3] This particular judgment entry only disposed of appellant's breach of contract claim. As such, the trial court never had the opportunity to dispose of the three outstanding claims against appellee, to-wit: unjust enrichment; violation of R.C. Chapter 1345, the Consumer Sales Practices Acts; and intentional infliction of emotional distress, as these claims were never discussed in the parties' motions for summary judgment.
[4] Appellee attached the affidavit of Sarah E. Joseph, the secretary/bookkeeper who made the error in the pricing of the burial marker. As an aside, we note that appellee does not allege that Ms. Joseph was not acting as an agent for it.
[5] A copy of the check was attached as an exhibit to appellant's motion for summary judgment.