[Cite as *Baumgartner v. AIM Leasing*, 2013-Ohio-883.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| ALBERT BAUMGARTNER, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-T-0070** |
| AIM LEASING, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2011 CV 1699.

Judgment: Affirmed.

*James E. Lanzo*, 4126 Youngstown-Poland Road, Youngstown, OH 44514 (For Plaintiff-Appellant).

*Stephen S. Zashin, B. Jason Rossiter,* and *Patrick M. Watts,* Zashin & Rich Co., L.P.A., 55 Public Square, 4th Floor, Cleveland, OH 44113 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Albert Baumgartner, appeals from the Order and Judgment Entry of the Trumbull County Court of Common Pleas, granting defendant-appellee, AIM Integrated Logistics' (AIM), Motion for Summary Judgment. The issues to be determined by this court are whether a settlement agreement provision can be waived by signing a release form and whether a provision is enforceable if one party fails to perform part of its obligation under that provision. For the following reasons, we affirm the judgment of the court below.

**{¶2}** Baumgartner was an employee of AIM, a trucking company, from April 2007 to May 2008, before he ceased to be employed by the company. Following the termination of his employment, he filed a lawsuit entitled *Baumgartner v. AIM Leasing Co.*, Case No. 4:08-CV-2765, in the United States District Court for the Northern District of Ohio. In that suit, a settlement agreement was reached between the parties. The agreement stated, inter alia, the following: "Baumgartner agrees to direct all persons who desire a reference about his prior employment at AIM to Patricia Durkin. AIM will respond to all such inquiries by providing the document attached as Exhibit B, and by providing further only Baumgartner's dates of employment, positions held, and his salary at the time of his separation from employment with AIM." The agreement was signed by Baumgartner on August 6, 2009, and by a representative from AIM on August 10, 2009. Attached to the agreement was Exhibit B, a document titled "Transportation Employment History," which stated the dates Baumgartner was employed with AIM, as well as other general information. The document did not refer to any accidents that occurred while Baumgartner was employed by AIM.

**{¶3}** On April 22, 2010, Baumgartner submitted a signed application for employment with Old Dominion Freight, another trucking company. A review of this application shows that, in the section titled "Accident Review (Past 10 Years)-Preventable and Non-Preventable," used for stating driving accidents, he wrote "none." The application also stated that "misrepresentation or omission of information will result in rejection or dismissal." A separate document, titled "Previous Employer Record Check," also signed by Baumgartner on the same date, was sent from Old Dominion to AIM. At the bottom of that form, right above Baumgartner's signature, it stated the following: "Dear Former Employer, You are hereby authorized to give Old Dominion

2

Freight Line, Inc. all information * * * regarding my employment. You are hereby released from any and all liability which may result from furnishing such information to Old Dominion." This form was subsequently filled out by an AIM human resources employee, on June 1, 2010 who stated that Baumgartner had been in three accidents, including one "preventable" and two "non-preventable," while employed at AIM.

{¶4} After filling out the application, Baumgartner began working for Old Dominion in April of 2010. Pursuant to the testimony given in Baumgartner's deposition in the present matter, after being employed by Old Dominion for several weeks, Baumgartner was informed by a manager that he was being "let go" after a report came back from AIM, which documented three "incidents" or accidents that occurred while Baumgartner was employed as a truck driver at AIM. At that time, Baumgartner told Old Dominion to contact Patricia Durkin, and was informed that it was "not their job to do that." He did not inform them to contact Durkin in his application or prior to being fired. Baumgartner later testified, however, that he was also informed by Old Dominion that he was terminated because he falsified his employment application and did not report his driving record properly.

{¶5} According to Baumgartner, in his employment application to Old Dominion, he did not report any of the accidents that occurred while he was employed by AIM. He explained that he would have reported them if he did not have an agreement with AIM. He testified that the Transportation Employment History attached to the settlement agreement stated that he had zero accidents while employed with AIM.

{¶6} On August 3, 2011, Baumgartner filed the Complaint in the present action against AIM, in which he asserted that AIM released information related to

3

Baumgartner's driving and accident record to Old Dominion, and that this was a breach of the settlement agreement signed during the prior litigation. Baumgartner argued that the release of this information caused him to lose his job with Old Dominion, and he requested money damages. Attached to the Complaint was a copy of the settlement agreement.

{¶7} On September 1, 2011, AIM filed its Answer and Counterclaim. In this Answer, it raised various affirmative defenses, including that Baumgartner's claims were waived, they were barred by estoppel, and that Baumgartner failed to follow the terms of the settlement agreement required to give rise to AIM's duty to perform. In its counterclaim, AIM asserted that Baumgartner breached the confidentiality provision of the settlement agreement by attaching a copy of it to his Complaint.

{¶8} On September 14, 2011, AIM filed a Motion to Seal Exhibit, requesting that the confidential agreement be sealed.

{¶9} On October 20, 2011, Baumgartner filed his Answer to the Counterclaim.

{¶10} AIM filed a Motion for Leave to File Amended Answer Instanter on October 26, 2011, and filed an Amended Answer of November 2, 2011.

{¶11} On April 25, 2012, AIM filed a Motion for Summary Judgment. In this Motion, AIM argued that, based on the language of the settlement agreement, no breach occurred. It asserted that Baumgartner never notified his prospective employer, Old Dominion, to contact Patricia Durkin, as required by the settlement agreement, and thus, no duty arose under the agreement for AIM to disclose only certain information.

{¶12} AIM also argued that Baumgartner signed a release authorizing AIM to provide information related to his driving record and is estopped from arguing that AIM should not have relied on this release as permission to provide such information.

4

{¶13} Attached to the Motion for Summary Judgment were several exhibits, including Baumgartner's aforementioned application for employment with Old Dominion and the Previous Employer Record Check. An affidavit of Patricia Durkin was also submitted, in which she attested to the fact that she was never contacted by anyone at Old Dominion regarding Baumgartner's employment application and that she did not provide any information to Old Dominion, but that another AIM human resources employee, Christie Barber, had filled out the employer record check.

{¶14} In Baumgartner's Response to the Motion for Summary Judgment, filed on June 22, 2012, he argued that there were genuine issues of material fact left to be argued at trial. He asserted that AIM failed to follow the specific language of the settlement agreement.

{¶15} On July 26, 2012, the trial court issued an Order and Judgment Entry, granting AIM's Motion for Summary Judgment "[f]or the reasons stated in Defendant's briefs." It entered judgment in favor of AIM on all claims asserted in Baumgartner's Complaint. A second Order and Judgment Entry containing the same ruling was also filed on August 6, 2012.

{¶16} On August 6, 2012, AIM filed a Notice of Voluntary Dismissal of Counterclaim Without Prejudice.

{¶17} Baumgartner timely appeals and raises the following assignment of error:

{¶18} "The trial court erred when it sustained appellee's motion [for] summary judgment."

{¶19} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears

5

from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶20} Moreover, the interpretation of a written contract is a question of law and is subject to de novo review. *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998). This court has noted that a "settlement agreement is a contract" and it must comply with the requirements of contract law. (Citation omitted.) *Marshall v. Beach*, 143 Ohio App.3d 432, 436, 758 N.E.2d 247 (11th Dist.2001).

{¶21} Baumgartner argues that the trial court should have overruled AIM's Motion for Summary Judgment because the settlement agreement forbid AIM from releasing his driving record to potential employers, since it stated that AIM could provide only certification of his employment dates, position held, and his salary. Baumgartner argues that the word "only" would be improperly disregarded if AIM were permitted to disclose his driving record.

{¶22} AIM asserts that it did not breach the settlement agreement because Baumgartner failed to comply with the requirement that inquiries regarding his employment be directed to Patricia Durkin, to ensure that his accident history would not be reported. AIM also argues that Baumgartner signed a release form authorizing

6

information regarding his employment to be provided by AIM and, therefore, is estopped from claiming that AIM violated the settlement agreement.

{¶23} Upon reviewing this matter, we conclude that there is no genuine issue of material fact and agree with the trial court's decision granting summary judgment in favor of AIM. The language of the pertinent settlement agreement provision stated that Baumgartner "agrees to direct all persons who desire a reference about his prior employment at AIM to Patricia Durkin." This appears to indicate that Baumgartner must refer any potential employer to Durkin in order for the company to provide the appropriate information. Baumgartner admitted in his deposition that he did not refer Old Dominion to Durkin until after AIM had already released Baumgartner's accident history to Old Dominion. Based on this testimony, there is no factual dispute that Baumgartner failed to follow the requirement in the settlement agreement to ensure that proper information was reported.

{¶24} As noted above, Baumgartner failed to refer Old Dominion to Durkin to receive information regarding his employment. Based on that failure, we find that the second portion of the relevant paragraph of the settlement agreement was not applicable to AIM and AIM did not violate the settlement agreement. The text of the settlement agreement stated that "Baumgartner agrees to direct all persons who desire a reference about his prior employment at AIM to Patricia Durkin. AIM will respond to all *such* inquiries" by providing the document attached as Exhibit B and "only Baumgartner's dates of employment, positions held, and his salary at the time of his separation from employment with AIM." (Emphasis added.) "Such" has been defined as "[t]hat or those; having just been mentioned." *Black's Law Dictionary* 1473 (8th Ed.2004). The use of the word "such" prior to the word "inquiries" can only be referring

7

to the portion of the sentence before it, which stated that Baumgartner would direct employers desiring a reference about his employment to Durkin. Since Baumgartner did not refer Old Dominion to Durkin, the asserted requirement that only limited information could be provided is not applicable under the language of the settlement agreement.

{¶25} Further, it cannot be argued that "such inquiries" could include all inquiries to AIM in general and not just those made to Durkin. "In construing a contract, a court * * * must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage." (Citation omitted.) *Ohio Patrolmen's Benevolent Assoc. v. Lordstown*, 118 Ohio App.3d 9, 12, 691 N.E.2d 1069 (11th Dist.1997). The use of the word "such" cannot be ignored. The phrase immediately preceding the word "such" specifically refers to references and inquiries being directed to Durkin, not to AIM in general. If the intent of the parties was for any and all inquiries to be included, the settlement agreement could have easily stated that intent.

{¶26} We also note that on the Employer Record Check, Baumgartner signed right under a portion stating that AIM was "authorized to give Old Dominion * * * all information * * * regarding [his] employment." It further stated that AIM was "released from any and all liability which may result from furnishing such information to Old Dominion." As asserted by AIM, this is consistent with waiver by estoppel. Waiver by estoppel "'exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it.'" *Nedel v. Nedel*, 11th Dist. No. 2007-P-0022, 2008-Ohio-1025, ¶ 47, citing *Natl. City Bank v. Rini*, 162 Ohio App.3d 662, 2005-Ohio-4041, 834 N.E.2d 836, ¶ 24 (11th Dist.). "Waiver by estoppel

8

allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights." *Id.* In the present matter, the statement in the release contradicts any intent by Baumgartner to assert that AIM could not supply certain types of information to Old Dominion. It was inconsistent with his intent to assert the provision of the settlement agreement which he argues prevented AIM from providing his accident history.

{¶27} Baumgartner argues that the settlement agreement should take precedence over any release form because rules of contract interpretation require that an express reservation dominates a general provision. However, such a rule is inapplicable, as the release was not a part of the contract and is not being interpreted, but instead considered only as it relates to Baumgartner's waiver of the provision in the settlement agreement. Moreover, Baumgartner's argument that the release was between himself and Old Dominion and not with AIM does not alter the fact that it specifically states Baumgartner is releasing AIM from liability and represents inconsistent conduct related to the enforcement of the settlement agreement.

{¶28} Both parties also present argument as to whether AIM was required under federal law to provide the accident information to Old Dominion. Pursuant to 49 CFR 391.23, previous motor carrier employers must respond to requests from potential future employers by providing data related to a previous employee's accidents. As defined by 49 CFR 390.5(1), an "accident" generally includes either a fatality, bodily injury, or "[o]ne or more motor vehicles incurring disabling damage as a result of the accident." The accident descriptions disclosed by AIM in the Previous Employer Record Check do not appear to fall under this definition, although neither party presents any argument to address this issue. However, since there was a sufficient basis to grant the Motion for

9

Summary Judgment on the other grounds addressed above, we need not reach this issue.

{¶29} Although AIM addresses the potential argument that it may have breached the settlement agreement by providing accident information to another potential employer, FedEx, we note that there was no reference to a breach involving such disclosure raised in the Complaint. Baumgartner also does not present any argument related to FedEx in his appellate brief. Based on the foregoing, we also need not address this issue.

{¶30} The sole assignment of error is without merit.

{¶31} For the foregoing reasons, the Judgment Entry of the Trumbull County Court of Common Pleas, granting summary judgment in favor of AIM, is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.